IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 17, 2012

## STATE OF TENNESSEE v. ANDREA NICHOLE BEAN

**Appeal from the Circuit Court for Bedford County**
**No. 17206     Robert Crigler, Judge**

**No. M2011-02767-CCA-R3-CD - Filed December 26, 2012**

The Defendant, Andrea Nichole Bean, pled guilty to the sale and the delivery of .5 grams or more of cocaine. At the sentencing hearing, the trial court merged the two convictions and imposed a sentence of sixteen years as a Range II, multiple offender to be served in the Department of Correction ("DOC"). In this direct appeal, the Defendant contends that the trial court erred in denying her an alternative sentence. After our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Donna Orr Hargrove, District Public Defender, and Andrew Jackson Dearing, III, Assistant Public Defender, for the appellant, Andrea Nichole Bean.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On August 15, 2011, the Defendant entered "open" guilty pleas to the sale and the delivery of .5 grams or more of cocaine, both Class B felonies. See Tenn. Code Ann. § 39-17-417(a), (c)(1). At the Defendant's plea hearing, the prosecutor summarized the facts surrounding the January 7, 2011 offenses as follows:

A confidential informant working on behalf of the Drug Task Force placed a monitored and recorded telephone call to the [D]efendant about purchasing crack cocaine from the [D]efendant and from the co-defendant Henry Wells.

The [D]efendant indicated that for a quantity that the CI was wanting to purchase, it would be a total of $400.

They agreed to meet at the BP Truck Stop near Bell Buckle.

Then the call was concluded.

The confidential informant was then searched and the vehicle was searched. That met with negative results.

The confidential informant was equipped with an audio recorder and then followed to the BP where surveillance agents of the Drug Task Force were watching.

The CI entered into the vehicle driven by Mr. Wells. The CI handed the money to the [D]efendant and the [D]efendant handed crack cocaine back to the CI. The CI then exited the vehicle and ultimately met back up with the Drug Task Force agents; turned the drugs over to the agents and it was sent to the lab and it weighed 2.82 grams of cocaine base.

A short time later, actually a state trooper stopped the vehicle driven by Mr. Wells and occupied by the [D]efendant and the buy money of $400 was recovered from the [D]efendant.

The trial court conducted the Defendant's sentencing hearing on October 17, 2011. The presentence report was admitted into evidence. The presentence report revealed that the Defendant's criminal history began in 1995 at eighteen years of age when she was convicted of marijuana possession. Then in December 1996, at age nineteen, she was convicted of three counts of Class B felony sale of cocaine and received an effective ten-year sentence in the DOC. Different offense dates were reflected in the presentence report for each of these three convictions. According to the report, the Defendant was paroled in November 1998, but that parole was revoked in April 2000 when she tested positive for marijuana.

In February 2000, the Defendant was arrested for and convicted of misdemeanor theft and received a suspended sentence of eleven months and twenty-nine days, following service

of forty-eight hours. According to the presentence report, the theft sentence was revoked in May 2001. The report showed that also in May 2001, the Defendant was granted parole on her ten-year sentence a second time. However, in August of the following year, she was arrested for reckless endangerment with a deadly weapon and carrying a weapon. Her parole was again revoked in October 2002. She was later convicted of reckless endangerment with a deadly weapon and sentenced to two years in the DOC, which sentence was to be served consecutively to her parole revocation. The report stated that the Defendant "flattened all sentences on September 21, 2005."

The presentence report further reflected that the Defendant was thirty-four years old at the time of sentencing, was single, and had no children. The Defendant said that she had "a very positive, close relationship with her family." However, the report also showed that her brother, sister, and sister-in-law had "convictions related to Schedule II drugs." It was also noted that her co-defendant in the instant case, Henry Wells, was the Defendant's boyfriend at the time of the offenses. The Defendant reported her mental health as excellent and her physical health as good, although she took medication for high blood pressure. The Defendant reported that she began using marijuana at sixteen years of age and that she last used marijuana just two weeks prior to the interview for the presentence report, which would have been while she was on bond. The Defendant stated that, although she continued to use marijuana, she did so "less than once a month." The Defendant conveyed that she used cocaine two to three times a week until the age of twenty-nine.

The Defendant reported that she was expelled from high school in the eleventh grade "for being unruly" and that she had not obtained her General Equivalency Diploma. The Defendant also conveyed that she had held three jobs since her release from the penitentiary in 2005. According to the Defendant, she was fired from each job: from Crockett's working as a server for having a "poor attitude"; from Wendy's working as "shift leader" for taking time off to be with her father while he was hospitalized; and from Quick Mart working as a cashier when they learned of her most recent arrest for these offenses.

The Defendant gave the following allocution at the sentencing hearing:

> I know I made a mistake about the charges I made. I know I have got priors or whatever. I know that what I did was wrong. I am not saying let me go free or nothing like that. I am asking if I can be considered as Community Corrections.
>
> I have got two jobs. I am going to church. I have changed my lifestyle around and everything.

I just want to know if I could get Community Corrections.

The parties proffered no other proof at the sentencing hearing.

The trial court first merged the two convictions and then determined that the Defendant was a Range II, multiple offender, making her sentencing range between twelve and twenty years. After considering the applicable enhancement and mitigating factors, the trial court imposed a sentence of sixteen years. The trial court noted that the Defendant was not eligible for probation because the length of her sentence exceeded ten years. As for placement in the Community Corrections Program, the court ruled as follows:

> [S]he has the felony reckless endangerment with a deadly weapon which perhaps in and of itself might not -- I think it says a history of crimes of violence so perhaps one conviction doesn't do that but she has no right to Community Corrections. Taking the entirety of her record into account, I am going to respectfully deny to place her on Community Corrections.

This appeal followed.

## ANALYSIS

In this appeal, the Defendant does not take issue with any finding made by the trial court, nor does she assert that the trial court erred in its consideration of enhancement or mitigating factors. The Defendant does argue that the appropriate sentence in this case would have been to allow the Defendant to serve her sixteen-year sentence in some alternative to incarceration, specifically community corrections.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." See State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Currently, upon a challenge to the sentence imposed, including questions related to probation or any other alternative sentence, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review,

granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Christine Caudle, -- S.W.3d --, No. M2010-01172-SC-R11-CD, 2012 WL 5907374, at *5 (Tenn. Nov. 27, 2012) (quoting Bise, 380 S.W.3d at 707). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). See State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2007).

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6)(A). No defendant is entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347.

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Because the Defendant was convicted of a Class B felony as a Range II, multiple offender, she should not be considered a favorable candidate for alternative sentencing. Additionally, we note that an offender is eligible for probation if he or she is sentenced to ten years or less and has not been convicted of certain specified offenses. See Tenn. Code Ann.

40-35-303(a). The trial court correctly concluded that the Defendant, sentenced to sixteen years, was statutorily ineligible for probation.

Moreover, the Defendant has a criminal history evincing a clear disregard for the laws of society and a failure of past efforts at rehabilitation. See Tenn. Code Ann. § 40-35-103(1)(A), (C). However, she argues that she is eligible for placement in the Community Corrections Program.

The Community Corrections Act was meant to provide an alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
> (B) Persons who are convicted of property-related or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (C) Persons who are convicted of nonviolent felony offenses;
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

Tenn. Code Ann. § 40-36-106(a)(1). Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Tenn. Code Ann. § 40-36-106(c).

Moreover, even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. See Tenn. Code Ann. § 40-36-106(d).

As noted by the trial court, the Defendant has a prior conviction for reckless endangerment involving the use of a deadly weapon. While reckless endangerment involving the use of a deadly weapon may constitute a violent offense, the statute requires a past "pattern of behavior indicating violence" or a "pattern of committing violent offenses." See Tenn. Code Ann. § 40-36-106(a)(1)(E), (F). We agree with the trial court that one conviction does not, by itself, constitute a pattern. Thus, the Defendant is eligible for community corrections under subsection (a).

The Defendant appears to also argue that she is eligible for community corrections under the "special needs" provision of Tennessee Code Annotated section 40-36-106(c) because she has a history of drug abuse. A defendant may rely on the special needs criteria for eligibility in a community based program, however, only if he or she does not qualify under subsection (a). See State v. Marcus Conner, No. M2007-02514-CCA-R3-CD, 2008 WL 4830726, at *4 (Tenn. Crim. App. Nov. 6, 2008) (citing State v. James R. Horn, Sr., No. M1999-00301-CCA-R3-CD, 2000 WL 680377, at *3 (Tenn. Crim. App. May 25, 2000)). Subsection (c) does not provide the Defendant any relief because she qualified for eligibility under subsection (a). Additionally, under subsection (c), if a defendant is statutorily ineligible for probation, he or she is per se ineligible for community corrections on a "special needs" basis. See Tenn. Code Ann. § 40-36-106(c); see also State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999); State v. Grisby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997); Boston, 938 S.W.2d at 438; State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). As previously noted, the Defendant is not eligible for probation with a sentence of sixteen years and, thus, not eligible under subsection (c).

Regarding the Defendant's eligibility under subsection (a), the record supports the trial court's determination denying the Defendant placement in the Community Corrections Program. We agree with the trial court that, given the Defendant's criminal history, her drug problem would best be addressed in a correctional facility. The Defendant was not to be considered as a candidate for an alternative sentence because she was convicted of a Class B felony and was sentenced as a multiple offender. Our review persuades us that the trial court considered the sentencing principles and all relevant fact and circumstances in making its determination. The trial court acted well within its discretionary authority in ordering the Defendant to serve her sentence in the DOC rather than in the Community Corrections Program. The Defendant is not entitled to relief on this issue.

## CONCLUSION

In accordance with the foregoing reasoning and authorities, the trial court did not abuse its discretion by denying the Defendant an alternative to incarceration. Accordingly,

the judgment of the trial court is affirmed.

                                 _____

                                 D. KELLY THOMAS, JR., JUDGE